# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY PAPAPIETRO, | : | Civil No. 3:22-CV-01624 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| THE BANK OF NEW YORK | : | |
| MELLON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I. Introduction.

Plaintiff Anthony Papapietro ("Papapietro") alleges violations of federal and state law in connection with the origination and servicing of a mortgage loan ("the Mortgage"). Papapietro names as defendants The Bank of New York Mellon f/k/a/ The Bank of New York as Successor-in-Interest to JP Morgan Chase Bank, N.A. as Trustee for Benefit Holders of Popular ABS, Inc. Mortgage Pass-Through Certificate Series 2005-4, by its Attorney-in-fact Ocwen Loan Servicing, LLC ("Bank of New York Mellon"); Wilmington Finance, a division of American International Group Federal Savings Bank a/k/a AIG ("Wilmington"); Litton Loan Servicing ("Litton"); Alexander Papadopolous; Misail Papadopolous; and Evangelica Papadopolous. Presently before the court are the defendants' motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The defendants argue that dismissal is

appropriate because (1) res judicata and collateral estoppel bar Papapietro's claims;

(2) Papapietro's claims are time-barred under the relevant statutes of limitations; and

(3) Papapietro fails to plead any factual allegations against Wilmington, Alexander

Papadopolous, Misail Papadopolous, or Evangelica Papadopolous.  For the reasons

set forth below, we will grant the defendants' motions to dismiss.  We will also grant

Papapietro leave to amend his complaint as to one claim against Bank of New York

Mellon.

## II.  Background.

Papapietro commenced this action pro se by filing a complaint naming as

defendants Bank of New York Mellon, Wilmington, Litton, Alexander Papadopolous,

Misail Papadopolous, and Evangelica Papadopolous. *Doc. 1* ¶¶ 2–6.  In his

complaint, Papapietro alleges that the defendants violated federal and Pennsylvania

law by engaging in deceptive practices and fraud related to the origination and

servicing of the Mortgage. *Id* ¶¶ 20–21.  The following facts are taken from the

complaint and other cases filed by or against Papapietro, of which we can take

judicial notice.

On June 20, 2005, Papapietro and his father, now deceased, executed a

promissory note in the amount of $405,600 to obtain a mortgage loan from

Wilmington. *Doc. 1* ¶¶ 19, 24.  Papapietro obtained the Mortgage to secure

residential property located at 413 Edgemont Road, Stroudsburg, Pennsylvania ("the

Stroudsburg property"). *Id.* ¶ 23.  Alexander Papadopoulos signed the deed to the

Stroudsburg Property on behalf of the grantors, Misail and Evangelica Papadopoulos.

*Id.* ¶ 204.  The Mortgage was assigned to and serviced by Popular Financial Services,

Inc. ("Popular"). *Id.* ¶ 27.  Papapietro contends that he began making monthly

payments on the Mortgage in August, 2005. *Id.* ¶ 25.  Popular charged late fees to the

Mortgage account 27 times, for a total of $3,828.60 (*id.* ¶ 73), despite Papapietro's

monthly payments (*id.* ¶ 80).  Papapietro wrote to the New York Attorney General to

contest Popular's late fees. *Id.* ¶ 64.  In response to Papapietro's letter, Popular

claimed that the monthly payments were not accepted due to charges to Papapietro's

escrow account for delinquent taxes. *Id.*  Papapietro asserts, however, that he paid

property taxes on the property covered by the Mortgage. *Id.* ¶¶ 35–36.  In response to

Papapietro's subsequent complaint to the Pennsylvania Department of Banking,

Popular claimed to have used the monthly payments to cover the cost of force-placed

insurance; although, according to Papapietro, his insurance policy never lapsed. *Id.*

¶¶ 70, 75.  Popular informed Papapietro that it was selling the Mortgage to Litton,

effective November 1, 2008. *Id.* ¶ 70.

Litton serviced the Mortgage until September 1, 2011. *Doc. 1* ¶ 81.  In August

2009 and September 2011, Litton charged Papapietro's escrow account to cover the

cost of force-placed insurance. *Id.* ¶¶ 126–27.  Again, Papapietro contends that his

insurance policy never lapsed throughout the time Litton serviced the Mortgage. *Id.* ¶¶ 89, 114. Litton charged 23 late fees to the Mortgage account, for a total of $3,261.40. *Id.* ¶ 124.

On October 24, 2009, Papapietro received an offer from Litton for a Home Affordable Modification Trial Period Plan ("TPP"). *Id.* ¶ 90; *see also Doc. 2-17* (October 24, 2009 letter from Litton to Papapietro). Papapietro claims to have "timely accepted the offer" by mailing Litton the executed TPP agreement and "supporting documentation" on November 29, 2009. *Doc. 1* ¶ 92. He further claims to have made payments in compliance with the TPP agreement for the months of December 2009, January 2010, and February 2010. *Id.* ¶ 97. On May 5, 2010, Litton mailed Papapietro a letter stating that Litton could not offer a permanent modification to the Mortgage because Papapietro failed to comply with the terms of the TPP agreement. *Id.* ¶ 108.

On September 1, 2011, Litton assigned the Mortgage to Ocwen Loan Servicing Company ("Ocwen"). *Id.* ¶ 133. Ocwen returned all but one of Papapietro's monthly payments as insufficient to satisfy the default on the loan. *Id.* ¶¶ 137, 139–40, 142–45, 149, 152–54, 157. In October 2011, Ocwen charged Papapietro's escrow account to cover the cost of force-placed insurance. *Id.* ¶ 135. Papapietro again asserts that his insurance never lapsed. *Id.* ¶ 136. Ocwen added a total of five late fees to the Mortgage account. *Id.* ¶ 162. On February 8, 2013, Papapietro sent Ocwen a

"qualified written request under the RESPA 12 U.S.C[sic] 2605(e)" to request an accounting of the Mortgage account transactions. *Doc. 1* ¶ 161.  Papapietro claims that he never received a response from Ocwen. *Id.*

Papapietro received a Notice of Intention to Foreclose Mortgage in May, 2012. *Id.* ¶ 155, *see also Doc. 3-8* at 2 (Notice of Intention to Foreclose Mortgage dated March 22, 2012).  On July 30, 2012, Bank of New York Mellon, by its Attorney-in-fact Ocwen, commenced a Mortgage Foreclosure Action ("Foreclosure Action") against Papapietro in the Court of Common Pleas for Monroe County, Pennsylvania.[1]

On April 23, 2013, Papapietro filed a complaint naming as defendants Popular, Litton, and Ocwen in the United States District Court for the Eastern District of New York (the "EDNY Litigation").[2] *See Doc. 52-1.*  Papapietro's complaint filed in the

---

[1] The complaint correctly states that Bank of New York Mellon brought the foreclosure action against Papapietro. *Doc. 1* ¶ 17; *see also U.S. Bank National Association not in its individual capacity but solely as Trustee for NRZ Pass-Through Trust VII (NPL) v. Anthony Papapietro, et al.*, No. 2012-cv-06414, CCP Monroe Cnty. (filed Jul. 30, 2012).  On September 17, 2020, the Bank of New York Mellon filed a Praecipe for Voluntary Substitution of Party Plaintiff substituting "U.S. Bank National Association, not in its individual capacity, but solely as Trustee for NRZ Pass-Through Trust VII (NPL), c/o NewRez LLC F/K/A New Penn Financial, LLC DBA Shellpoint Mortgaging Servicing, 55 Beattie Place, Suite 100, Greenville, SC, as successor Plaintiff for the originally named Plaintiff." *Doc. 67-8.* The parties to the Foreclosure Action have since entered into a loan modification agreement. *See Doc. 61-10* (December 30, 2022 letter filed in the Foreclosure Action).

[2] *Papapietro v. Popular Mortgage Servicing Co. et al*, No. 13-cv-2433, 2014 WL 5824682 (E.D.N.Y. Nov. 10, 2014).

EDNY Litigation contained the following counts: (1) violations of the Federal Debt

Collection Practices Act ("FDCPA"); (2) violations of the Truth in Lending Act

("TILA"); (3) violations of the Real Estate Settlement Procedures Act ("RESPA");

(4) breach of contract; (5) breach of fiduciary duty; (6) intentional infliction of

emotional distress; and (7) violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"). *See Doc. 52-1.*  The Eastern District of New York

entered summary judgment in favor of Popular on November 10, 2020.[3]  The court

subsequently entered summary judgment in favor of Litton and Ocwen on March 31,

2020.[4]  Papapietro appealed the judgment to the Second Circuit Court of Appeals,

which affirmed the district court's judgment and order denying reconsideration.[5]

Following his appeal to the Second Circuit, Papapietro commenced the instant

action in this court. *See Doc. 1.*  Papapietro asserts the following claims: (1) FDCPA

violations (*id.* ¶ 168); (2) TILA violations (*id.* ¶ 171); (3) RESPA violations (*id.*

¶ 176); (4) breach of contract (*id.* ¶ 179); (5) breach of fiduciary duty (id. ¶ 184);

(6) intentional infliction of emotional distress (*id.* ¶¶ 187–92); (7) RICO violations

---

[3] *Papapietro v. Popular Mortgage Servicing Co. et al*, No. 13-cv-2433, 2014 WL 5824682, at *11 (E.D.N.Y. Nov. 10, 2014).

[4] *Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529, at *11 (E.D.N.Y. Mar. 31, 2020).

[5] *Papapietro v. Litton Loan Servicing, LP*, No. 20-1179 (L), 20-2807 (Con), 2022 WL 1421404, at *2 (2d Cir. May 5, 2022).

(*id.* ¶¶ 195–201); and (8) "Federal Mortgage Fraud" and "Fraud for Profit" (*id.* ¶ 204).[6]

Papapietro seeks the following relief: (1) "Actual damages according to proof;" (2) "Statutory damages and penalties;" (3) "Prejudgment interest at maximum rate;" (4) "Damages to credit reputation;" (5) "Expense of litigation, including attorney's fees;" (6) "Punitive damages;" (7) "Such other damages as are appropriate in this case;" and (8) "For a trial by Jury." *Id.* ¶ 207.

## III.  Procedural History.

Papapietro filed the operative complaint on October 17, 2022. *Doc. 1.*  The court ordered Papapietro to serve the summons and complaint on the defendants, and to file a return of service within 90 days of the date he filed the complaint. *Doc. 7.* On January 26, 2023, the court issued an order instructing Papapietro to refrain from contacting the court via email, noting that he could instead file any motions which he deemed appropriate. *Doc. 8.*  Papapietro subsequently filed a motion requesting a

---

[6] Papapietro fails to identify the state or federal law on which he bases this claim.

thirty-day extension of time to serve the defendants and to file proof of service. *Doc. 9.*  The court granted this motion on January 31, 2023. *Doc. 10.*[7]

Alexander Papadopolous filed a motion to dismiss (*doc. 15*) and a brief in support (*doc. 16*) on March 7, 2023.  Papapietro filed a brief in opposition to Alexander Papadopolous's motion to dismiss on April 17, 2023. *Doc. 37.*

Litton filed a motion to dismiss (*doc. 22*) and a brief in support of this motion (*doc. 23*) on March 14, 2023.  Papapietro filed a brief in opposition to Litton's motion to dismiss on April 20, 203. *Doc. 43.*  Litton responded to Papapietro's brief by filing a reply brief in support of its motion to dismiss.[8]

On April 18, 2023, Misail and Evangelica Papadopolous filed a motion to dismiss (*doc. 39*) and a brief in support of the motion (*doc. 40*).  Papapietro failed to file a responsive brief addressing Misail and Evangelica Papadopolous's motion to dismiss.

Papapietro filed a motion for leave to amend on April 20, 2023. *Doc. 42.*  In this motion, Papapietro sought to add attorney Robert Williams as a defendant. *Doc. 49 ¶¶ 6, 10.*  Papapietro filed a brief in support of the motion (*doc. 49*) but failed to

---

[7] The order dated January 31, 2023 required Papapietro to "(1) serve the summons and the complaint on the defendants in accordance with Fed. R. Civ. P. 4; and (2) file return of service" by March 2, 2023.

[8] This document, filed on April 27, 2023, is entitled "Reply Memorandum of Defendant Litton Loan Servicing, LP in Support of its Motion to Dismiss Plaintiff's Complaint. *Doc. 47.*

file a proposed amended complaint as required by M.D. Pa. L. R. 15.1(a). *See doc. 63.* Several defendants filed a brief in opposition to the motion for leave to amend, arguing that the motion should be dismissed for failure to state a cause of action and failure to comply with the local rules. *Doc. 50.* After reviewing the parties' briefs, the court denied Papapietro's motion for leave to amend without prejudice. *Doc. 63.*

Wilmington filed a motion to dismiss (*doc. 48*) and a supportive brief (*doc. 51*) on May 1, 2023. Papapietro filed a brief in opposition to Wilmington's motion to dismiss on June 9, 2023. *Doc. 55.*

On May 31, 2023, Papapietro filed a request for default as to Bank of New York Mellon. *Doc. 53.* On June 1, 2023, the Clerk of Court entered default against Bank of New York Mellon for failure to timely respond to Papapietro's complaint. *Doc. 56.* Bank of New York Mellon subsequently filed a motion to set aside the default and a brief in support. *Docs. 56, 58.* In its supporting brief, Bank of New York Mellon asserted that it failed to timely respond to the complaint due to confusion by its servicing agents over the transfer of servicing rights of the Mortgage. Papapietro then filed an affirmation in opposition, in which he argued that Bank of New York Mellon "had every opportunity to respond . . . but neglected to do so." *Doc. 60.* After reviewing the parties' briefs, the court entered an order setting aside the default against Bank of New York Mellon on October 23, 2023. *Doc. 64.*

Bank of New York Mellon filed a motion to dismiss (*doc.* 65) and a brief in support (*doc.* 66) on November 1, 2023.  Papapietro filed a brief in opposition  to Bank of New York Mellon's motion to dismiss on January 11, 2024. *Doc. 74.*  Bank of New York Mellon then filed a reply brief in support of its motion to dismiss. *Doc. 75.*

On September 1, 2023, all parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 62*.

## IV.  Pleading and Motion-to-Dismiss Standards.

The defendants argue that Papapietro's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See Docs. 16, 23, 40, 51, 66.*

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6) "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger*

11

*v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## V.  Discussion.

The defendants argue that Papapietro's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See Docs. 16, 23, 40, 51, 66.*  In their briefs in support of the pending motions to dismiss, Wilmington, Litton, and Bank of New York Mellon argue that res judicata and collateral estoppel preclude Papapietro's claims against them. *See Docs. 23, 51, 66.*  The defendants all contend that Papapietro's claims are time-barred under the applicable statutes of limitations, and that Papapietro fails to state a claim upon which relief can be granted. *See Docs. 16, 23, 40, 51, 66.* Wilmington, Alexander Papadopolous, Misail Papadopolous, and Evangelica Papadopolous further contend that Papapietro's complaint fails to assert factual allegations of wrongdoing to support his "Fraud for Profit" claim. *See Docs. 16, 39, 66.*  We address each motion to dismiss.

## A. Litton.

Litton argues that Papapietro's claims are barred by res judicata and collateral estoppel because the complaint is an attempt to relitigate "virtual carbon copies" of the claims heard in the EDNY Litigation. *Doc. 23.* Litton asserts that both Papapietro and Litton were named parties in the EDNY Litigation, and that the District Court, which rendered summary judgment in favor of Litton in the EDNY Litigation, had proper subject-matter jurisdiction over Papapietro's claims. *Id.* Litton further asserts that Papapietro sets forth identical factual allegations and claims against Litton in the operative complaint as were alleged in the complaint in the EDNY Litigation. *Id.*

In his responsive brief to Litton's motion to dismiss, Papapietro acknowledges that the EDNY reached a final resolution,[9] although he fails to acknowledge that the EDNY Litigation included similar factual allegations or claims. *Doc. 43.*

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Res judicata may be properly raised by a defendant when a plaintiff asserts "essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Lubrizol Corp.*

---

[9] Papapietro's brief in opposition states that "[o]n March 31, 2020, the District Court, Eastern District of New York, Justice Kuntz, handed down a decision granting LITTON(sic) Summary Judgment, without warning during a global pandemic, after the case had sat for several years with no action." *Doc. 43* ¶ 6.

*v. Exxon Corp.*, 929 F.2d 960, 966 (3d Cir. 1991) (quoting *Gambocz v. Yelencsis*, 468

F.2d 837, 841 (3d Cir. 1972).  Claim preclusion and issue preclusion "relieve parties

of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

preventing inconsistent decisions, encourage reliance on adjudication." *Allen v.

McCurry*, 449 U.S. 90, 94 (1980).  Claim preclusion requires "(1) a final judgment on

the merits in a prior suit involving (2) the same parties or their privies and (3) a

subsequent suit based on the same cause of action." *In re Healthcare Real Est.

Partners, LLC*, 941 F.3d 64, 72 (3d Cir. 2019) (quoting *In re Mullarkey*, 536 F.3d

215, 225 (3d Cir. 2008)).

    After reviewing the parties' arguments, we conclude that Papapietro's

claims against Litton are barred by claim preclusion.  Litton and Papapietro were

parties to the EDNY Litigation, in which Papapietro brought identical claims

against Litton.[10]  On March 31, 2020, the United States District Court for the

Eastern District of New York granted Litton's motion for summary judgment and

dismissed Papapietro's amended complaint. *See Papapietro v. Litton Loan

Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529, at \*1 (E.D.N.Y. Mar. 31,

---

[10] The only claim in the instant case not included in the complaint filed in
the EDNY Litigation is "Count 8 - Federal Mortgage Fraud" and "Fraud for
Profit," which we construe as brought against defendants Wilmington, Alexander
Papadopolous, Misail Papadopolous, and Evangelica Papadopolous. *Doc. 1*
¶¶ 203–04.

2020).  Papapietro then appealed to the Second Circuit Court of Appeals, which

affirmed the Eastern District of New York's grant of summary judgment and

denial of reconsideration. *See Papapietro v. Litton Laon Servicing, LP*, No. 20-

1179 (L), 20-2807 (Con), 2022 WL 1421404 (2d Cir. May 5, 2022).  The Eastern

District of New York's dismissal of Papapietro's claims against Litton[11] constitutes

a final judgment for the purposes of res judicata.  Therefore, each element of res

judicata is satisfied and Papapietro's claims against Litton must be dismissed.


### B. Bank of New York Mellon.

Bank of New York Mellon contends that Papapietro's claims are precluded by

res judicata and collateral estoppel because "he previously asserted the same claims

in the EDNY Litigation and lost." *Doc. 66.*  In its motion to dismiss, Bank of New

York Mellon argues that it is in privity with the defendants of the EDNY Litigation

because it initiated the Foreclosure Action by and through Ocwen, a defendant in the

---

[11] The court dismissed the remaining five claims for failure to state a claim. *Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529, at *3, 5 (E.D.N.Y. Mar. 31, 2020); *see also Lewis v. Smith*, 361 Fed. Appx. 421, 424 (3d Cir. 2010) ("[D]ismissal for failure to state a claim under Rule 12(b)(6) is a final judgment on the merits for res judicata purposes."). The district court dismissed two claims as time-barred. *Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529, at *6–11 (E.D.N.Y. Mar. 31, 2020); *see also Donahue v. Dauphin County*, 852 Fed. Appx. 630, 633–34 (3d Cir. 2021) ("A dismissal based on the running of the statute of limitations is a final judgment on the merits for the purposes of res judicata.").

EDNY Litigation and Bank of New York Mellon's servicing agent. *Id.* Bank of New York Mellon further argues that, even if Papapietro's claims are not barred by claim preclusion, all claims against Bank of New York Mellon are time-barred under the applicable statutes of limitations. *Id.* Finally, Bank of New York Mellon argues that Papapietro's claims fail as a matter of law because his complaint "is completely devoid of any allegations of wrongdoing" by Bank of New York Mellon. *Id.* at 9.

In his brief in opposition to Bank of New York Mellon's motion, Papapietro asserts that res judicata and collateral estoppel do not apply because he has never brought suit against Bank of New York Mellon. *Doc. 74.* He next asserts that his claims "have never been fully addressed by the court." *Id.* Finally, Papapietro asserts that Bank of New York Mellon "has not proven that it had standing to bring the foreclosure action" [12] and that Bank of New York Mellon violated TILA by failing to notify Papapietro of the transfer of the Mortgage to U.S. Bank. *Id.*

---

[12] We will not address this contention because Papapietro failed to raise it in the complaint. *See Doc. 1.* The only allegation regarding the Foreclosure Action is found in Count Seven, in which Papapietro claims that the defendants' violation of RICO caused the Stroudsburg property to be "wrongfully put into foreclosure action" *Doc. 1* ¶ 202. Papapietro fist mentions Bank of New York Mellon's standing in the Foreclosure Action in his brief in opposition to the pending motion. *See Doc. 74*; *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Nevertheless, for the reasons discussed below, any such claim is barred by the statute of limitations.

### 1. Res Judicata.

We agree that Bank of New York Mellon is in privity with Ocwen, a named defendant in the EDNY Litigation.  In naming the defendants in the complaint, Papapietro acknowledges that Bank of New York Mellon acted "by its Attorney-in-fact Ocwen." *Doc. 1* ¶ 2.  Papapietro's claims against Bank of New York Mellon are, therefore, barred by res judicata to the extent that they relate to Ocwen's servicing of the Mortgage.  Such claims include Count 1: Violations of the FDCPA; Count 2: Violations of the TILA; Count 3: Violations of RESPA by Ocwen for "failing to meet the requirements of 12 U.S.C. § 2605 and 12 U.S.C. § 2609;" Count 4: Breach of Contract;[13] Count 5: Breach of Fiduciary Duty;[14] Count 6: Intentional Infliction of Emotional Distress;[15] and Count 7: Violations of RICO.  The United States District

---

[13] The Decision and Order in the EDNY Litigation stated that "[t]he parties under both the Promissory Note and the Mortgage are Plaintiff, as Borrower, and Wilmington Finance, as lender. Neither Litton nor Ocwen are a party to the agreements and therefore are not liable for any alleged breach of the Promissory Note or Mortgage." *Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529 at *9 (E.D.N.Y. March 31, 2020).

[14] The District Court in the EDNY Litigation held that Papapietro failed to establish a fiduciary relationship between himself and Ocwen. *Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529 at *9 (E.D.N.Y. March 31, 2020).  Papapietro fails to plead any additional facts in the operative complaint to show that a fiduciary relationship exists between him and Bank of New York Mellon.

[15] The District Court in the EDNY Litigation held that Papapietro failed to show that Ocwen's conduct "r[o]se to the level of extreme and outrageous." *Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529 at

Court for the Eastern District of New York granted Ocwen's motion for summary

judgment and dismissed Papapietro's amended complaint on March 31, 2020. *See*

*Papapietro v. Litton Loan Servicing, LP*, No. 13-cv-2433, 2020 WL 13179529, at *1

(E.D.N.Y. Mar. 31, 2020).  As stated above, Papapietro brought identical claims

against Ocwen in the EDNY Litigation as he now brings against Bank of New York

Mellon. *See Doc. 1*.  The operative complaint asserts the same factual allegations as

those raised in the complaint in the EDNY Litigation.  Therefore, Papapietro's claims

against Bank of New York Mellon are barred by res judicata to the extent that they

arise from Ocwen's servicing of the Mortgage.


### 2.  Failure to State a Claim.

To the extent that Papapietro is attempting to assert a claim against Bank of

New York Mellon for violating RESPA by failing to notify him of the transfer to U.S.

Bank, he fails to meet the pleading requirements of Federal Rule of Civil Procedure

8(a) because he alleges no facts in his complaint in this regard.

RESPA requires federal mortgage servicers to "notify the borrower in writing

of any assignment, sale, or transfer of the servicing of the loan to any other person."

---

*10 (E.D.N.Y. March 31, 2020).  By pleading the same factual allegations in the
operative complaint as in the EDNY Litigation, Papapietro fails to provide
additional facts to show that a fiduciary relationship exists between him and Bank
of New York Mellon. *See Doc. 1*.

12 U.S.C. § 2605(b)(1).  The required notice must be sent "not less than 15 days before the effective date of transfer" and must include certain information regarding the transfer and the transferee. 12 U.S.C. §§ 2605(b)(2)–(3).

In Count Three of his complaint, Papapietro claims that "The Defendants violated RESPA 12 U.S.C. §2605 and §2609 by . . . failing to meet the requirements . . . regarding transfer of servicing." *Doc. 1.*  The complaint fails, however, to state a claim against Bank of New York Mellon based on the assignment to U.S. Bank.  In fact, the only mention of U.S. Bank in the complaint is found in Papapietro's citations to the Foreclosure Action.  But Papapietro does not allege anything regarding Bank of New York Mellon's assignment of the mortgage to U.S. Bank in his complaint.  Rather, it is not until in his brief in opposition to Bank of New York Mellon's motion that Papapietro asserts that Bank of New York Mellon failed to notify him of the transfer of the Mortgage to U.S. Bank. *Doc. 74* at 2.[16]  Thus, to the extent that Papapietro is attempting to assert a

---

[16] Papapietro asserts that this transfer occurred "on or about May 22, 2020," and that the transfer "is, as a matter of law, a violation of . . . TILA." *Doc. 74* at 2. He also asserts that he did not learn of the transfer until "on or about October 17, 2022, when [he] filed this action against" Bank of New York Mellon. *Id.*  But we take judicial notice that on September 17, 2020, in the foreclosure action, Bank of New York Mellon filed a Praecipe for Voluntary Substitution of Party Plaintiff substituting "U.S. Bank National Association, not in its individual capacity, but solely as Trustee for NRZ Pass-Through Trust VII (NPL), c/o NewRez LLC F/K/A New Penn Financial, LLC DBA Shellpoint Mortgaging Servicing, 55 Beattie Place, Suite 100, Greenville, SC, as successor Plaintiff for the originally named Plaintiff." *Doc. 67-8* (September 17, 2020 Praecipe for Voluntary Substitution of

claim against Bank of New York Mellon for violating RESPA by failing to notify

him of the assignment to U.S. Bank, the complaint fails to state a claim upon

which relief can be granted.

### 3. Statute of Limitations.

Any remaining claims against Bank of New York Mellon[17] must be

dismissed because they are time-barred under the applicable statutes of limitations.

"A statute of limitations defense is an affirmative defense that a defendant

must usually plead in his answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir.

---

Party Plaintiff filed in the Foreclosure Action).  That praecipe was based on the
assignment of the mortgage to U.S. Bank, and it attached a copy of the assignment.
*Id*.  Thus, Papapietro knew or reasonably should have know of the assignment at
that time.  And given that, as discussed below, TILA's statute of limitations is one
year, any TILA claim based on the assignment is barred by the statute of
limitations.  But given that Papapietro is proceeding pro se and given his general
reference in his complaint to transfers violating RESPA in an abundance of caution
we construe Papapietro as also asserting a claim under RESPA.  As set forth
above, he fails to state a claim in his complaint under RESPA.  But as Bank of
New York Mellon has not specifically addressed whether leave to amend should be
granted as to any such RESPA claim, as set forth later, we will grant Papapietro
leave to amend as to such a claim.  Although we will grant Papapietro leave to
amend, we make no determination at this point on whether we will be able to state
a claim upon which relief can be granted.

[17] By "any remaining claims against Bank of New York Mellon" we mean
any claims other than: (1) the claims based on Ocwen servicing the mortgage,
which as discussed above, are barred by claim preclusion; and (2) any claim under
RESPA based on the assignment to U.S. Bank, as to which, as discussed above,
Papapietro has failed to state a claim upon which relief can be granted.

2015).  Although the statute of limitations is an affirmative defense, a court can

dismiss a complaint based on the statute of limitations when "the complaint

facially shows noncompliance with the limitations period and the affirmative

defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein,*

*Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir.1994).  But "'[i]f the bar is not

apparent on the face of the complaint, then it may not afford the basis for a

dismissal of the complaint under Rule 12(b)(6).'" *Schmidt v. Skolas,* 770 F.3d 241,

249 (3d Cir. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)

(quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

And "a plaintiff is not required to plead, in a complaint, facts sufficient to

overcome an affirmative defense." *Schmidt*, 770 F.3d at 251.  "Thus, if 'the

pleading does not reveal when the limitations period began to run,' then 'the

statute of limitations cannot justify Rule 12 dismissal.'" *Stephens*, 796 F.3d at 288

(quoting *Barefoot Architect, Inc. v. Bunge,* 632 F.3d 822, 835 (3d Cir. 2011)).

Here, any remaining claims against Bank of New York Mellon are time-

barred.  According to the complaint, Papapietro last received communication from

Ocwen on August 7, 2012. *Doc. 1* ¶ 157.  He also alleges that Ocwen failed to

respond to a "qualified written request under the RESPA," which Papapietro

claims to have sent on February 8, 2013. *Id*. ¶ 161.  Papapietro asserts that Bank of

New York Mellon filed the Foreclosure Action,[18] but he fails to assert any claims arising from the Foreclosure Action in his complaint. *Doc. 1* ¶ 17.  Additionally, Bank of New York Mellon is no longer the plaintiff in the Foreclosure Action.[19] Therefore, any remaining claims against Bank of New York Mellon occurred on or before February 8, 2013.

Private civil actions under the FDCPA must be brought "'within one year from the date on which the violation occurs.'" *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (quoting 15 U.S.C. § 1692k(d)).  TILA claims must also be brought within one year from the date of the alleged violation. 15 U.S.C. § 1640(e). RESPA claims[20] must be brought "within 3 years in the case of a violation of section 2605." 12 U.S.C. § 2614.  Civil actions brought under RICO must be

---

[18] Bank of New York Mellon filed the Foreclosure Action on July 30, 2012. *U.S. Bank National Association not in its individual capacity but solely as Trustee for NRZ Pass-Through Trust VII (NPL) v. Anthony Papapietro, et al.*, No. 2012-cv-06414, CCP Monroe Cnty. (filed Jul. 30, 2012).

[19] *See supra* note 16.

[20] Papapietro mentions 12 U.S.C. § 2609 in his complaint. See d*oc. 1* ¶ 76. No private right of action exists, however, for such a claim. *See Sun v. Mortg. Rsch. Ctr., LLC*, No. 1:21-CV-02108, 2022 WL 4486978, at *3 n.6 (M.D. Pa. Sept. 27, 2022) (noting that "it is well-established that RESPA did not create a private remedy for violations of § 2609"); *McAndrew v. Deutsche Bank Nat. Trust Co.*, 977 F. Supp. 2d 440, (M.D. Pa. 2013) ("Although the Third Circuit Court of Appeals has yet to address this issue, district courts within the Third Circuit have determined that section 2609 fails to contain a private right of action.").

brought within four years. *Egnotovich v. Greenfield Tp. Sewer Authority*, 304 Fed.

Appx. 94, 98 (3d Cir. 2008) (citing *Rotella v. Wood*, 528 U.S. 549, 553 (2000)).

Under Pennsylvania law, a four-year statute of limitations applies to breach of

contract claims. 42 Pa. C.S. § 5525(a).  Pennsylvania law imposes a two-year

statute of limitations for actions sounding in fraud,[21] breach of fiduciary duty,[22] and

intentional infliction of emotional distress.[23]  As a result, Papapietro filed his

claims against Bank of New York Mellon well outside of the applicable statutes of

limitations.  This includes any claim based on the filing of the Foreclosure Action,

which occurred on July 30, 2012.

In his briefs in opposition to the pending motions, Papapietro argues that the

"Continuing Wrong Doctrine" tolled the running of the applicable statutes of

limitations at the time of the last "unauthorized transfer" from the Bank of New York

Mellon to U.S. Bank National Association not in its individual capacity but solely as

Trustee for NRZ Pass-Through Trust VII (NPL) ("U.S. Bank"). *Doc. 43*.  Under this

---

[21] 42 Pa. C.S. § 5524(7).

[22] 42 Pa. C.S. § 5524(7); *Weis-Buy Services, Inc. v. Pagila*, 411 F.3d 415,
422 (3d Cir. 2005) ("Pennsylvania law . . . provides that such claims [for breach of
fiduciary duty] must be brought within two years of the date the claim accrues.").

[23] *Bougher v. University of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989)
("Under Pennsylvania law, claims alleging the commission of intentional torts are
also subject to a two-year statute of limitations.") (citing 42 Pa. C.S. § 5524).

theory, Papapietro claims that the statute of limitations for all of his claims tolled on

May 20, 2020. *Id.*

"The continuing violation doctrine, where applicable, provides an 'exception

to the normal knew-or-should-have-known accrual date.'" *Gonzales v. Hasty*, 802

F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243,

248 (2d Cir. 1999)).  "This doctrine operates as a type of tolling and is often

applied to address injuries that are the 'collective result of many non-actionable'

slights." *Patterson v. Strippoli*, 639 F. App'x 137, 141 (3d Cir. 2016) (quoting

*Major Tours, Inc. v. Colorel,* 799 F.Supp.2d 376, 387 n.3 (D.N.J. 2011)).  Thus,

"[t]o allege a continuing violation, the plaintiff must show that all acts which

constitute the claim are part of the same unlawful . . . practice and that at least one

act falls within the applicable limitations period." *Mandel v. M & Q Packaging

Corp.*, 706 F.3d 157, 165–66 (3d Cir. 2013).  Discrete acts that are individually

actionable, however, constitute separate practices and cannot be aggregated into a

single claim. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14

(2002).

The continuing violation doctrine does not apply to Papapietro's claims

against Bank of New York Mellon because bringing the Foreclosure Action and

then assigning the Mortgage to U.S. Bank were discrete acts separate from

Popular, Litton, and Ocwen's previous servicing of the Mortgage.  Therefore, the

continuing violation doctrine does not apply here, and Papapietro's remaining claims against Bank of New York Mellon are time-barred.

### C. Wilmington.

Papapietro brings his "Fraud for Profit" claim against Wilmington, Alexander Papadopolous, Misail Papadopolous, and Evangelica Papadopolous. *Doc. 1* ¶ 204.  In this claim, Papapietro asserts that he "did not sign . . . nor was he represented by counsel or anyone else that could sign" the Certificate of Residence[24] filed with the deed to the Stroudsburg property. *Id.*  Papapietro further states that he "does not know whose signature this is and who signed it on his behalf." *Id.*  Papapietro fails to explain what law he brings this claim under, but notes that "Fraud for Profit [is] [o]ne of the two (2) types of Mortgage Fraud recognized by Federal Law." *Id.*

In its brief supporting its pending motion, Wilmington argues that Papapietro's claims regarding the origination or servicing of the Mortgage are barred by res judicata and collateral estoppel. *Doc. 51.*  Wilmington contends that the claims "previously were or could have been litigated in the EDNY litigation." *Id.*  Wilmington further claims to be in privity with the defendants in the EDNY

---

[24] Interestingly, Papapietro does not claim that the address listed on the certificate was or is incorrect. *See Doc. 1*. In fact, the Certificate of Residence (*doc. 3-12* at 5.) contains the same address for Papapietro as is listed on the first page of the deed to the Stroudsburg property (*id.* at 2.).

Litigation because Wilmington is the predecessor in interest to the Mortgagee. *Id.* Wilmington also argues that Papapietro's claims are time-barred, as they have a maximum statute of limitations of four years and Wilmington originated the Mortgage in 2005. *Doc. 51.*

Papapietro argues that res judicata does not apply because Wilmington "was never brought into a lawsuit" by Papapietro. *Doc. 55* ¶ 3.[25]  In his brief in opposition to Wilmington's motion to dismiss, Papapietro argues that he must include Wilmington in the present action to show "a continuing action of wrongdoing" because Wilmington originated the Mortgage. *Id.* ¶ 4.[26]

Papapietro's claims against Wilmington are time-barred under the applicable statutes of limitations.  Under Pennsylvania law, claims based on "deceit or fraud" must be brought within two years. 42 Pa. C.S. § 5524(7).  In the instant case,

---

[25] We construe this argument as a reference to the fact that Wilmington was not a named defendant in the EDNY Litigation. *See Papapietro v. Popular Mortgage Servicing Co. et al, No. 13-cv-2433, 2014 WL 5824682, at \*11 (E.D.N.Y. Nov. 10, 2020); Papapietro v. Litton Loan Servicing, LP, No. 13-cv-2433, 2020 WL 13179529, at \*11 (E.D.N.Y. Mar. 31, 2020).*

[26] Papapietro also asserts that he "is preparing a forensic analysis . . . of the mortgage and note transfers in this matter." *Doc. 55* ¶ 5.  We will not address this argument because Papapietro failed to raise it in his complaint. *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

Wilmington originated the Mortgage on June 20, 2005. *Doc. 1 ¶* 23.  According to Papapietro, the deed to the Stroudsburg property was also filed on June 20, 2005. *Id.* ¶ 204.[27]  Wilmington subsequently sold the Mortgage, which was serviced by Popular as early as August 2005. *Docs. 51* at 16, *1 ¶* 27.  Any alleged wrongdoing by Wilmington occurred over 18 years before Papapietro commenced this action, so Papapietro's claims fail to fall within the applicable two-year statute of limitations.

The continuing violation doctrine does not apply to Papapietro's claim against Wilmington because Wilmington's origination of the Mortgage was a discrete act separate from the subsequent servicing of the Mortgage.  The complaint fails to allege any facts that support an inference that Wilmington was involved in the signing of the Certificate of Residence, that it had knowledge of any fraudulent activity regarding the certificate, or that it was involved with the servicing of the Mortgage.  Papapietro's claims against Wilmington, therefore, must be dismissed.

---

[27] The deed to the Stroudsburg property was recorded on June 23, 2005. *Doc. 3-12* (Deed and Certificate of Residence recorded by the Recorder's Office of Monroe County, Pennsylvania).

**D. Alexander Papadopolous.**

In his complaint, Papapietro claims that Alexander Papadopolous signed the deed to the Stroudsburg property as his parents' agent, but he makes no specific allegations as to who signed the Certificate of Residence. *Doc. 1* ¶ 204.  Nonetheless, Papapietro asserts that "[t]his is a prime example of Fraud for Profit and falsifying information of the borrower." *Id.*

Alexander Papadopolous agrees that he signed the deed to the Stroudsburg property on behalf of his parents, Misail and Evangelica Papadopolous, using a Power of Attorney. *Doc. 16* at 4.  In his brief in support of his pending motion to dismiss, he also contends that "[a]ll the mortgage documents, the foreclosure documents and even the docket sheet in this case lists the same address" for Papapietro as that listed on the Certificate of Residence. *Id.* at 9.  Alexander Papadopolous asserts that a closing agent lawfully signed the certificate on behalf of Papapietro, and argues that Papapietro's claims are time-barred by the 2-year Pennsylvania statute of limitations for actions sounding in fraud. *Id.* at 9–10 (citing 42 Pa. C.S. § 5524).

We agree that Papapietro fails to allege any facts in the complaint to support a claim against Alexander Papadopolous.  In the complaint, Papapietro asserts that he "did not sign . . . nor was he represented by counsel or anyone else that could sign" the Certificate of Residence filed with the deed to the Stroudsburg property. *Doc. 1*

¶ 204.  Papapietro further states that he "does not know whose signature [it] is and who signed it on his behalf." *Id.*  Papapietro fails to explain what law he brings this claim under or to state any facts alleging that Alexander Papadopolous, or any other individual, fraudulently signed the Certificate of Residence.

Even if Papapietro successfully alleged that Alexander Papadopolous fraudulently signed the Certificate of Residence, his claim would be barred by Pennsylvania's two-year statute of limitations for claims based on "deceit or fraud." 42 Pa. C.S. § 5524.  We note that the Certificate of Residence was recorded with the deed to the Stroudsburg property on June 23, 2005. *Doc. 3*-12 (Deed and Certificate of Residence recorded by the Recorder's Office of Monroe County, Pennsylvania).  Thus, Papapietro knew or reasonably should have known about the signature in question on or about June 23, 2005.  Papapietro's claim against Alexander Papadopolous, therefore, must be dismissed.

### E.  Misail and Evangelica Papadopolous.

We construe Papapietro's "Fraud for Profit" claim as also brought against Misail and Evangelica Papadopolous. *Doc. 1* ¶ 204.  Again, Papapietro's complaint fails to meet the pleading requirements of Rule 8(a) as it fails to include any facts alleging that either Misail or Evangelica Papadopolous signed the Certificate of Residence.  Even if Papapietro presented facts alleging that Misail or Evangelica

Papadopolous engaged in fraud, his claims would be barred by the 2-year statute of limitations under Pennsylvania law. 42 Pa. C.S. § 5524.  Thus, Papapietro's claims against Misail and Evangelica Papadopolous must be dismissed.

## VI.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

"Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).  "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id*. (quoting *In re Merck & Co. Sec., Derivative, & ERISA Litig., 493 F.3d 393, 400 (3d Cir. 2007)).  Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *Id.*  "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'" *Id*. (quoting *Winer Family Trust v. Queen,* 503 F.3d 319, 330–31 (3d Cir. 2007)).

With the possible exception of a RESPA claim against Bank of New York Mellon under 12 U.S.C. § 2605 based on the assignment of the Mortgage to U.S. Bank, Papapietro's claims are barred by res judicata and the applicable statutes of limitations. Thus, granting leave to amend as to any such claims would be futile. To the extent that Papapietro seeks to amend to bring claims against Bank of New York Mellon for lack of standing to bring the Foreclosure Action, such amendment would also be futile because such claim would be barred by the statute of limitations. Again, Bank of New York Mellon filed the Foreclosure Action on July 30, 2012. Accordingly, any such claim is barred by the maximum statute of limitations of four years. Thus, we will grant Papapietro leave to amend but only as to a RESPA claim against Bank of New York Mellon based on the assignment to U.S. Bank.

## VII.  Conclusion.

For the foregoing reasons, we will grant the pending motions to dismiss. *Docs. 15, 22, 39, 48, 65.* We will also grant Papapietro limited leave to amend. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

32