UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY PAPAPIETRO, | : | Civil No. 3:22-CV-01624 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| THE BANK OF NEW YORK MELLON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

## I. Introduction.

Plaintiff Anthony Papapietro ("Papapietro") alleged violations of federal and state law in connection with the origination and servicing of a mortgage loan ("the Mortgage"). We dismissed Papapietro's claims and closed this case. Presently before the court is Papapietro's motion to reopen the case. For the reasons set forth below, we will deny the motion to reopen.

## II. Background and Procedural History.

Papapietro commenced this action pro se by filing a complaint naming as defendants The Bank of New York Mellon f/k/a/ The Bank of New York as Successor-in-Interest to JP Morgan Chase Bank, N.A. as Trustee for Benefit Holders of Popular ABS, Inc. Mortgage Pass-Through Certificate Series 2005-4, by its

Attorney-in-fact Ocwen Loan Servicing, LLC ("Bank of New York Mellon"); Wilmington Finance, a division of American International Group Federal Savings Bank a/k/a AIG; Litton Loan Servicing; Alexander Papadopolous; Misail Papadopolous; and Evangelica Papadopolous. *Doc. 1* ¶¶ 2–6.  In his complaint, Papapietro alleged that the defendants violated federal and Pennsylvania law by engaging in deceptive practices and fraud related to the origination and servicing of the Mortgage. *Id* ¶¶ 20–21.

On September 1, 2023, all parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 62*.  We later granted the defendants' motions to dismiss the complaint. *See doc. 77*.  But we granted Papapietro leave to amend regarding a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., against the Bank of New York Mellon. *Id*.

On April 30, 2024, Papapietro filed an amended complaint. *Doc. 78*.  He alleged that on June 20, 2005, he "and his father, now deceased, executed a promissory note in the amount of $405,600 and obtained a mortgage loan from Wilmington for the property located at 413 Edgemont Road, Stroudsburg, Pennsylvania." *Id*. at 2.  He further alleged that, on September 1, 2011, Ocwen Loan Servicing Company "began servicing the loan" and, at some point, transferred the loan to the Bank of New York Mellon. *Id*.  According to Papapietro, he was not

notified of this "transfer of assignment[,]" which he claims was "a violation of RESPA." *Id*. at 2–3.  On July 30, 2012, the Bank of New York Mellon "commenced a Mortgage Foreclosure Action against [him] in the Court of Common Pleas for Monroe County, Pennsylvania." *Id*.  Papapietro alleged, however, that the Bank of New York Mellon "lack[ed] standing to file for said foreclosure." *Id*. at 3.  He also alleged that the Bank of New York Mellon violated RESPA, "failed to provide [him] with disclosures detailing the loan servicing and escrow account statement[,]" "failed to provide a comprehensive list of all charges and fees related to the loan to preclude the imposition of undisclosed or hidden charges on [him,]" and did not "offer [him] alternative options other than [f]oreclosure[.]" *Id*. at 2–4.  Due to the alleged violations of RESPA by the Bank of New York Mellon, Papapietro asserted, he "has suffered damages such as out of pocket expenses and emotional distress due to the attempted foreclosure of his family home[.]" *Id*. at 4.  Papapietro sought "damages for the violations of RESPA." *Id.*

After the Bank of New York Mellon filed a motion to dismiss the amended complaint and a brief in support of that motion, *docs. 81*, *82*, we ordered Papapietro to file a brief in opposition on or before June 12, 2024, *doc. 83*.  Papapietro did not file a brief in opposition.  But on July 23, 2024, he filed a letter regarding his diminished ability to file a brief in opposition due to his worsening blindness. *Doc. 84*.  He stated that he would, however, "be able to submit [the brief in opposition] by

3

July 25, 2024." *Doc. 84* at 1. Nevertheless, Papapietro still did not file a brief in opposition. And after receiving no further filings from Papapietro, we ordered him to show cause by October 4, 2024, why this action should not be dismissed pursuant to Fed. R. Civ. P. 41(b). *Doc. 85* at 2. And we warned Papapietro that if he fails to show cause, we may deem him to have abandoned this lawsuit, and we may dismiss this case. *Id*. Papapietro did not respond to the show cause order.

On November 13, 2024, by a Memorandum Opinion and an Order, after considering the factors set forth in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), we dismissed the case pursuant to Fed. R. Civ. P. 41(b). *Docs. 86, 87*. In so doing, we considered—among the other relevant factors—whether Papapietro presented a meritorious claim. *Doc. 86* at 14–15.

We noted that the Bank of New York Mellon asserted that it was never a servicer of Papapietro's mortgage, and it argued that the amended complaint failed to state a RESPA claim upon which relief can be granted because Papapietro failed to allege that the Bank of New York Mellon was a servicer of the loan under 12 U.S.C. § 2605(b) and (c). *Id*. at 14. We agreed, reasoning as follows:

> RESPA is "a consumer protection statute that regulates the real estate settlement process" and generally imposes "notice and reporting requirements" on loan servicers. *Jones v. ABN AMRO Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). "A loan 'servicer' under RESPA is 'the person responsible for servicing of a loan . . . .'" *Id.* And "[t]he term 'servicing' is defined to mean 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . .

4

> and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.'" *Id*. The provisions of 12 U.S.C. § 2605 only apply to mortgage loan servicers. *See* 12 U.S.C. § 2605(b) ("Each servicer of any federally related mortgage loan shall notify . . . "); *see also Jones*, 606 F.3d at 123–25.
>
> In his amended complaint, Papapietro does not allege that the Bank of New York Mellon was a loan servicer. *See generally doc. 78.* He only alleges that, on September 1, 2011, Ocwen Loan Servicing Company "began servicing the loan" and, at some point, transferred the loan to the Bank of New York Mellon. *Id.* at 2. Thus, he fails to state a meritorious claim under 12 U.S.C. § 2605(b) and (c).

*Id*. at 14–15.

We also noted that the Bank of New York Mellon argued that Papapietro failed to "follow this [c]ourt's [o]rder and the Federal Rules of Civil Procedure" because Papapietro brought several claims that were outside the scope of this court's order granting him leave to amend. *Id*. at 15 (quoting *doc. 82* at 2). We again agreed:

> We gave Papapietro leave to amend only as to the RESPA claim based on the assignment of the mortgage from the Bank of New York Mellon to the U.S. Bank (*see doc. 77*), not as to the assignment of the mortgage from Ocwen Loan Servicing Company to the Bank of New York Mellon. Yet Papapietro does not mention the U.S. Bank at all in his amended complaint and instead, among other unrelated claims, focuses on the transfer of assignment from Ocwen Loan Servicing Company to the Bank of New York Mellon. *Id.* at 2–3. Thus, Papapietro was not given leave to amend these claims.

*Id*.

On November 13, 2024, we dismissed this case pursuant to Fed. R. Civ. P. 41(b). *See doc. 87.*

On February 6, 2025, a Michelle Murphy, who purported to be an assistant to Anthony Papapietro, sent an email to the undersigned's chambers email account with an attached letter from Papapietro asking the court to reopen this case. And on February 11, 2025, Papapietro filed the letter that was attached to the email on the docket. *See doc. 88.* We informed Papapietro that a motion, rather than an email or letter, is the proper procedure to ask the court to act. *Id.* at 1–2. And we ordered that the court will take no action on the email or Papapietro's letter. *Id.* at 2.

On February 26, 2025, Papapietro filed document titled "Notice of Motion to Reopen Civil Action," as well as an affidavit and attached documents. *See docs. 90, 91.* Given that Papapietro is proceeding pro se, we liberally construe what Papapietro filed as a motion to reopen. And although Papapietro did not file a separate brief in support of that motion, the Bank of New York Mellon responded to the motion. *See doc. 92.* We later ordered Papapietro to file, on or before August 5, 2025, a brief in support of his motion to reopen setting forth his legal arguments in support of his motion and specifying which provision or provisions he is relying on in seeking to reopen this case. *Doc. 93.* Papapietro has not filed a brief in support of his motion to reopen. Nevertheless, since Papapietro has filed

an affidavit and since the Bank of New York Mellon has responded to the motion, we will address the motion.

### III. Discussion.

Papapietro moves to reopen this action. He asserts in his affidavit that he is diabetic and has had a multitude of problems with his eyesight—including glaucoma and cataracts in both eyes—over the past year or so. *Doc. 91* ¶ 1. He asserts that his first cataract surgery was in June of 2024, and that surgery, which was on his right eye, was a success, and he healed well. *Id.* ¶ 5. He further asserts that in August 2024, he had surgery on his left eye, but that that surgery was flawed. *Id.* ¶ 6. After that second surgery, he was declared legally blind. *Id.* And since that second surgery, he has been going for injections in his eyes, and laser surgery of his left eye is scheduled for February 19, 2025. *Id.* ¶ 7. Papapietro submitted medical records that corroborate that he was scheduled for surgery in June and August 2024. *See doc. 91-1*.

Papapietro requests that the court reopen this case and give him (another) opportunity to respond to the Bank of New York Mellon's motion to dismiss. *Doc. 91* ¶ 8. Papapietro does not assert under what provision is seeking to reopen this case.

7

But it appears that Fed. R. Civ. P. 60(b), which provides grounds for relief from a final judgment, order, or proceeding, is the only likely candidate.[1]

Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for certain specified reasons. More specifically, the Rule provides as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

---

[1] Federal Rule of Civil Procedure 59(e) "allows a litigant to file a 'motion to alter or amend a judgment.'" *Banister v. Davis*, 590 U.S. 504, 507 (2020) (quoting Fed. R. Civ. P. 59(e)). But such a motion "must be filed no later than 28 days after the entry of judgment." Since Papapietro filed his motion to reopen more than 28 days after this case was closed, we do not construe him as moving to reopen pursuant to Fed. R. Civ. P. 59(e).

"A motion under Rule 60(b) must be made within a reasonable time—and for reason (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  Rule 60 "'attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." *Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 694 (2025) (quoting 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2851, p. 286 (3d ed. 2012)).

The Bank of New York Mellon addresses Papapietro's motion as seeking relief pursuant to Rule 60(b)(6). *See doc. 92*.  Given Papapietro's failure to specify under what section he is moving to reopen the case, that is not unreasonable.  But it appears to us that Papapietro's motion may properly fall within Rule 60(b)(1), which provides for relief based on, among other things, excusable neglect.

We note at the outset that "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993).[2]  And "[b]ecause of the language and structure of Rule 60(b), a party's failure to file on time for reasons beyond his

---

[2] "Although *Pioneer* involved a Bankruptcy Rule, subsequent courts have held that *Pioneer's* interpretation of excusable neglect extends to other federal procedural rules including Fed. R. Civ. P. 60(b)(1)." *George Harms Const. Co. v. Chao*, 371 F.3d 156, 163 (3d Cir. 2004).

or her control is not considered to constitute neglect." *Id*. (internal quotation marks, citation, and footnote omitted). Thus, we must first determine whether Papapietro's failure to file his brief in opposition to the motion to dismiss was due to neglect, such that Rule 60(b)(1) applies, or was beyond his control, such that Rule 60(b)(1) does not apply.

Here, Papapietro asserts that his vision worsened, and he was eventually declared legally blind. But he has not shown that it was beyond his control to respond to the Bank of New York Mellon's motion to dismiss. His brief in opposition to the Bank of New York Mellon's motion to dismiss was due on or before June 12, 2024. *See doc. 83*. That was before Papapietro's first cataract surgery, which was scheduled for June 24, 2024. *See doc. 91-1* at 2–4. Papapietro asserts that his first surgery in June 2024 was a success and he healed well, *see doc. 91* ¶ 5, and on July 23, 2024, he filed a letter with the court regarding his diminished ability to file a brief in opposition due to his worsening blindness, but he stated that he would "be able to submit [the brief in opposition] by July 25, 2024." *Doc. 84* at 1. Nevertheless, Papapietro did not file a brief in opposition by July 25, 2024, and he does not explain why not. He does assert that his second cataract surgery, which was in August 2024, did not go well and left him legally blind, *see doc. 91* ¶ 6. But he does not explain why he could not have filed his brief before the second surgery. Moreover, he did not respond to the show cause order issued by the court, which was

10

issued well after his second surgery. Further, he has not shown that despite his problems with his vision, he could not respond to the show cause order by the October 4, 2024 deadline for him to do so. Thus, we conclude that Papapietro's failure to respond was not beyond his control, but rather was a result of neglect. Accordingly, we apply 60(b)(1) and proceed to address whether Papapietro has shown that his neglect is excusable.

The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. In making that determination, we consider "1) the danger of prejudice to the other party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay—and whether it was within the movant's control; and 4) whether the movant acted in good faith." *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007) (quoting *In re Cendant Corp. PRIDES Litig.*, 234 F.3d 166, 171 (3d Cir. 2000)). The court "must consider and balance all factors, and 'no one factor trumps the others.'" *Perrigo Institutional Inv. Grp. v. Papa*, No. 24-2861, 2025 WL 2315977, at *7 (3d Cir. Aug. 12, 2025) (quoting *In re Am. Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005)). "The strength of a party's position may also be relevant in deciding upon Rule 60(b)(1) relief." *Orie v. Dist. Att'y Allegheny Cnty.*, 946 F.3d 187, 192 n.10 (3d Cir. 2019).

Here, after balancing the factors, we conclude that Papapietro has not shown excusable neglect. The Bank of New York Mellon has not argued that it would be prejudiced by reopening the case, which was dismissed at the motion-to-dismiss phase, and we can discern no prejudice. Papapietro seeks to reopen the case so that he can file a brief in opposition to Bank of New York Mellon motion to dismiss. Such a reopening would not have a significant impact on judicial proceedings. As to the length of the delay, Papapietro's brief in opposition was due on or before June 12, 2024, and he filed his motion to reopen on February 26, 2025, a period of a little more than eight months. Although eight months is not long in absolute terms, as discussed above, Papapietro's delay remains largely unexplained, which brings us to the reason-for-the-delay factor. Papapietro was aware of his obligation to file a brief in opposition, but he has not explained his failure to file his brief by, at the latest, July 23, 2024, the date he said he would. Nor has he explained why he failed altogether to respond to the show cause order. And Papapietro's failure to do so casts doubt on whether he was acting in good faith. While we are not unsympathetic to Papapietro's condition, he cannot simply ignore court orders or chose when he responds. Moreover, as discussed in the Order dismissing this case, the amended complaint fails to state a claim upon which relief can be granted. In sum, although some factors weigh in favor of reopening, others weigh against reopening, and balancing those

factors leads us to conclude that Papapietro has not shown excusable neglect. Accordingly, this case will not be reopened pursuant to Fed. R. Civ. P. 60(b)(1).

We turn then to Fed. R. Civ. P. 60(b)(6). "[A] motion for relief under Rule 60(b) is discretionary[.]" *Waetzig*, 145 S. Ct. at 698. Although "Rule 60(b) vests wide discretion in courts," "relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)); *see also BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1617 (2025) ("We have consistently held that only 'extraordinary circumstances' can justify relief under the Rule 60(b)(6) catchall."). And "relief under Rule 60(b)(6) is available 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'" *Honickman*, 145 S. Ct. at 1619 (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)).

Here, as set forth above, Rule 60(b)(1) applies, but because Papapietro has not shown that his neglect is excusable, he is not entitled to relief under that provision. Nevertheless, because rule 60(b)(1) is applicable, Rule 60(b)(6) is not. *Honickman*, 145 S. Ct. at 1619. Moreover, given that, as discussed above, Papapietro has not explained much of his delay in this case and because his amended complaint fails to state a claim upon which relief can be granted, in any event, Papapietro cannot show extraordinary circumstances warranting relief under Rule 60(b)(6).

13

## IV. Conclusion.

For the foregoing reasons, we will deny Papapietro's motion to reopen. An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge